**Ioannis CHLOMOS a/k/a John Hlomos, Petitioner,**

v.

**U. S. DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 74–1819.**

United States Court of Appeals, Third Circuit.

Argued March 3, 1975.

Decided May 8, 1975.

---

Michael N. Kouvatas, Haddonfield, N. J., for petitioner.

Chester J. Halicki, Dept. of Justice, John L. Murphy, Chief, Government Regulations Section, Crim. Div., Washington, D. C., for respondent.

Before ADAMS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The extent to which an administrative agency may curtail a statutorily conferred right to the assistance of retained counsel is the main ingredient of this appeal. As a result of an adverse decision in an immigration hearing in February, 1974, which he in effect was required to attend without his lawyer, petitioner Chlomos was ordered to be deported. His subsequent appeal to the Board of Immigration Appeals was dismissed. We conclude that undue curtailment of the privilege of representation requires that we vacate and remand.

Petitioner is a Greek national who came to the United States as a seaman aboard the S. S. Resolute and deserted that ship on March 28, 1968 in Philadelphia. Although his temporary permit allowed him to stay in the country for twenty-nine days, he remained beyond that period.

On May 31, 1970, he entered into an alleged sham marriage for the purpose

of staying in this country and on June 19, 1970, filed a petition for an immigrant visa based on that marriage. On June 24, 1970 he was granted the opportunity to leave the country voluntarily. The record does not disclose whether this privilege was granted as a result of the filing of the petition or whether there was an overlap in administrative proceedings.

■ Chlomos did not leave in the thirty-day period allowed and on July 8, 1970, he was served with an order to show cause[1] directing that he appear at the Immigration and Naturalization office in Newark, New Jersey for a hearing on "A Date to Be Fixed." No date was set, nor was a hearing ever held in Newark.

In January, 1972, both petitioner and one Louis Georgakilis were indicted in the district of New Jersey for conspiracy and defrauding the United States through a sham marriage.[2] Chlomos was the subject of an additional count for overstaying his leave. After petitioner pleaded *nolo contendere* to all counts on August 21, 1973, he received a suspended sentence and two years probation under the Youth Corrections Act. 18 U.S.C. § 5010 et seq.

At some time not specified in the record, Chlomos began to work as a race horse exercise boy—employment which required him to travel between New Jer-

sey and other states as the seasonal nature of the sport dictated. Counsel at argument represented that this travel was with the approval of the probation officers.

On Friday, January 25, 1974, an immigration officer who had participated in the earlier proceedings in New Jersey saw petitioner working at a race track near Miami, Florida and arrested him. He remained in jail until the case was called for hearing on the following Monday morning, January 28, 1974.

■ The hearing officer[3] was then told by Chlomos that he wanted to be represented by his lawyer. The hearing was continued until the following day, and the government officials were directed to give petitioner the use of a telephone. On Tuesday, Chlomos stated that he had not been able to telephone his attorney in New Jersey the preceding day but had talked to petitioner's employer who had been present at the hearing. The immigration judge then began to take testimony despite Chlomos' insistence that he wanted his lawyer. However, the prosecutor ("trial attorney") indicated that he was willing to give the petitioner more time, and the hearing was continued until the following Monday. The immigration judge warned petitioner that he would deny any motions to send the case back to New Jersey.[4]

On the appointed day, February 4, Chlomos again appeared without counsel.

---

1. An order to show cause should contain a concise statement of the violation and a designation of the charges against the alien. It is comparable to an indictment in a criminal proceeding or a complaint in a civil action. *See* 1 Gordon and Rosenfield, Immigration Law and Procedure, § 5.5 et seq. (Rev.ed.1974).

2. 18 U.S.C. § 1546.

3. The statute refers to a person conducting a deportation hearing as a "special inquiry officer." The name of the position, though not its functions or responsibilities, was later changed to "immigration judge" which is to be used interchangeably with the statutory designation. 8 C.F.R. § 1.1(1).

4. The hearing officer's prejudgment thus improperly precluded development of significant

considerations such as the availability of witnesses in New Jersey, the opportunity for petitioner to establish his cooperation with the government in the criminal prosecution there, and the likelihood that Chlomos' lawyer who had detailed knowledge of those circumstances could be present for a hearing in that state. The alleged inconvenience and expense to the government cited as a reason for the immigration judge's ruling are not supported by the record. While venue is not clearly delineated in the statute, a hearing in New Jersey, the petitioner's permanent residence, would be appropriate. La Franca v. Immigration and Naturalization Service, 413 F.2d 686 (2d Cir. 1969).

The trial attorney advised the immigration judge that a lawyer—apparently petitioner's New Jersey counsel—had called the district director and requested that the case be returned to New Jersey. The immigration judge made no inquiry of the district director, nor did he attempt to contact the New Jersey Immigration and Naturalization office which had issued the show cause order. Petitioner had shown that order to the immigration judge on the preceding Tuesday, and hence he was aware of the existence of a case file there. Nevertheless, the hearing officer proceeded with testimony despite Chlomos' repeated requests for his lawyer.

Chlomos declined to cross-examine the agent or to make any statement about the exhibits. When asked to what country he wished to be sent, petitioner responded, "I need a lawyer. I would like to talk to my lawyer."

The immigration judge then made an oral disposition of the case, finding that on the basis of the conviction of 18 U.S.C. § 1546 (the sham marriage), the petitioner was statutorily ineligible for voluntary departure under § 244 of the Immigration and Nationality Act, 8 U.S.C. § 1254. The hearing officer added that even if the statutory ban did not exist, he would deny the privilege as a matter of administrative discretion.

■ An alien subjected to deportation proceedings is entitled to due process of law. The Japanese Immigrant Case, 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721 (1903). In Bridges v. Wixon, 326 U.S. 136, 154, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103 (1945), the Court said:

> "We are dealing here with procedural requirements prescribed for the protection of the alien. Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is

a penalty—at times a most serious one—cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness."

See also McLeod v. Peterson, 283 F.2d 180, 183 (3d Cir. 1960), where we said:

> " . . . we are dealing with an especially critical and fundamental individual right."

The statutory requisites for deportation cases are set out in 8 U.S.C. § 1252(b) and include:

1. reasonable notice of the charges and of the time and place where the proceeding will be held; [5]

2. the privilege of representation by counsel (at no expense to the government);

3. opportunity for the alien to examine the evidence produced, to cross-examine and present evidence in his own behalf; and

4. a decision of deportability based on reasonable, substantial, and probative evidence.

■ The issue of representation by counsel of petitioner's choice is our chief concern on this appeal. The Immigration and Naturalization Service files on petitioner contained notations that he was and had been represented by Michael N. Kouvatas, Esquire, of Camden, New Jersey. A telephone call by the hearing officer or the government trial attorney to the Newark office would have revealed the fact that a lawyer had entered his appearance for Chlomos. Notice of the impending proceeding then could and should have been given to that attorney. We disapprove of an administrative agency scheduling a hearing for a person who it knows is represented by counsel without giving reasonable notice to the lawyer. Such conduct is more than simply discourteous; it is unfair. It was particularly aggravating here, where the petitioner was incarcerated

---

5. In view of the conclusion we reach on the denial of effective representation by counsel, we need not reach the issue of the adequacy of the rule to show cause utilized in this case.

and under a handicap in communicating with his lawyer. Moreover, petitioner's difficulty in securing his lawyer's presence at the hearing was complicated by the fact that the government chose to have the hearing in Florida rather than in New Jersey.

In addition to the reference to the privilege of representation by counsel found in 8 U.S.C. § 1252 (noted above), Congress enacted a specific provision, 8 U.S.C. § 1362, which reads:

> "In any exclusion or deportation proceedings before a special inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceeding, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose."

Practicality dictates the application of the statute. We do not speak of a right to counsel at government expense as in cases like Henriques v. Immigration and Naturalization Service, 465 F.2d 119 (2d Cir. 1972), where it was held that no such requirement existed. We accept the holding in that case, though we have misgivings with the dictum that:

> "Thus counsel, even if furnished, could not have obtained any other result in the administrative proceedings . . No prejudice can be said to have resulted from the absence of counsel.

This being true, the hearing below was not invalid." [Citations omitted] 465 F.2d at 120.

We need not reach this point, however, because representations of counsel which appear in the administrative record present an arguable basis for showing actual prejudice to the petitioner here. The facts of Chlomos' youth (he was 20 years old at the time), his inducement into the alleged sham marriage by a more knowledgeable and culpable "con artist" (as characterized by counsel), and the extent of cooperation with the prosecution in the district court in New Jersey might all have been favorably developed by his chosen lawyer who was thoroughly familiar with the details. Thus, even if a showing of prejudice is necessary, the record contains enough to make that a serious consideration.[6]

■ While two continuances were granted in this case, as a practical matter, they were inadequate to make the services of his chosen counsel available to petitioner. There was no necessity for the hasty hearing by the immigration judge, and arrangements could have been made which would have been reasonable for both the government and petitioner's counsel. We do not condone unnecessary delay or dilatory tactics through the ruse of counsel's unavailability. Efficient management of the administrative process can prevent such abuse when it appears. That did not appear to be a problem here.[7]

6. At oral argument, counsel for Chlomos advised the court that the judgment of conviction had been set aside and expunged by order of the district court of New Jersey. We have been furnished a copy of an order of that court dated November 15, 1974, which discharged the petitioner from probation as of that date and set aside the conviction pursuant to 18 U.S.C. § 5021(b). In Mestre Morera v. Immigration and Naturalization Service, 462 F.2d 1030 (1st Cir. 1972), such action was held to have removed the statutory mandate for deportation in 8 U.S.C. § 1251. Cf. Brownrigg v. Immigration and Naturalization Service, 356 F.2d 877 (9th Cir. 1966); Garcia-Gonzales v. Immigration and Naturalization Service, 344 F.2d 804 (9th Cir. 1965). This evidence, of course, would not have been available in January, 1974, but it should be considered by the

Immigration and Naturalization Service on remand. We do not pass upon the merits of that question here.

7. We do not retreat from our holdings in United States ex rel. Carey v. Rundle, 409 F.2d 1210 (3d Cir. 1969), cert. denied 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970), and Hodge v. Hodge, 507 F.2d 87 (3d Cir. 1975), that a trial court has wide discretion in refusing continuances to allow a litigant to have representation by counsel of his choice. But the circumstances are quite different in this administrative proceeding which was conducted far from where it was originally brought and where crucial witnesses lived. Moreover, unlike a trial in the district court, this hearing could have been transferred with little or no inconvenience to the government.

The deportation order will be vacated and the matter remanded to the Board of Immigration Appeals for further proceedings consistent with this opinion.