Jesus Ernesto HERNANDEZ–
PEREZ, Petitioner,

v.

Michael B. MUKASEY, Attorney
General, Respondent.

No. 06–74286.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 2007.

Filed March 25, 2008.

Ikuta, Circuit Judge, dissented and filed
opinion.

John C. Cunningham, Eric W. Marstel-
ler, DOJ—U.S. Department of Justice Civ-
il Div./Office of Immigration Lit., Washing-
ton, DC, Ronald E. LeFevre, Office of the
District Counsel, Department of Homeland
Security, San Francisco, CA, WWS–Dis-
trict Counsel, Immigration and Naturaliza-
tion Service, Office of the District Counsel,
Seattle, WA, for Respondent.

Before: PREGERSON, FERGUSON,
and IKUTA, Circuit Judges.

MEMORANDUM *

Jesus Ernesto Hernandez–Perez, a na-
tive and citizen of Mexico, timely petitions
for review of an order of the Board of
Immigration Appeals ("BIA") dismissing
his appeal from an Immigration Judge's
("IJ") order of removal. The parties are
familiar with the facts of this case, and we
do not repeat them here, except as neces-
sary to explain our decision. We have
jurisdiction under 8 U.S.C. § 1252(a)(2)(D)
to consider Hernandez's claims to the ex-
tent they raise legal and constitutional is-
sues. We grant the petition and remand
to the BIA for proceedings consistent with
this disposition.

Hernandez alleges a number of legal
errors and due process violations. While
many aspects of his hearing might have
been conducted differently, we find only
one due process violation that requires us
to grant his petition.[1] Hernandez con-
tends that the IJ and the BIA, when con-
sidering whether his mother would suffer
extreme hardship, violated his due process
rights by failing to consider psychiatric

---

* This disposition is not appropriate for publica-
tion and is not precedent except as provided
by 9th Cir. R. 36–3.

1. We reject the government's argument that
Hernandez does not have a cognizable due

process claim because he is seeking discre-
tionary relief. The government's position is
foreclosed by *Fernandez v. Gonzales,* 439 F.3d
592, 602 n. 8 (9th Cir.2006).

evidence indicating that his mother would likely attempt suicide were he deported. We agree.[2]

Due process requires that the agency "review all relevant evidence." *See Larita–Martinez v. I.N.S.*, 220 F.3d 1092, 1095 (9th Cir.2000). We presume that the BIA reviews all evidence in the record, and have thus held that "an alien attempting to establish that the Board violated his right to due process by failing to consider relevant evidence must overcome the presumption that it did review the evidence." *Id.* at 1095–96.

We conclude that Hernandez has overcome this presumption with respect to the affidavits of psychiatrist Dr. John Wakefield. Dr. Wakefield's diagnosis stated that Hernandez's mother, Guillermina Avila, suffered from "severe depressive disorder and an acute stress disorder." In his affidavit, Wakefield was of the opinion that Hernandez's removal to Mexico would severely affect his mother's mental health:

> [Hernandez's mother] has a high level of severe anxiety . . . with an on-going preoccupation with her son's potential deportation. This preoccupation contains a continual conclusion that her life will be over and that she cannot bear life without Mr. Hernandez staying in the United States as part of the family. She believes suicide would be her only alternative if her son were deported. Her demeanor is desperate, agitated and often frantic. . . .
>
> My conclusion is that *as further permanent separation* between Mrs. Avila and Mr. Hernandez *appears now a possibility, Mrs. Avila is no longer able to re-main hopeful and emotionally stable.* She now poses a serious risk of suicide as her health decreases. Her depression is increasing, along with acute anxiety.
>
> *In my professional opinion, Mrs. Avila is likely to attempt suicide if her son [,] Ernesto Hernandez, is deported.* I would strongly recommend that he be allowed to remain with his family in order to care for his mother. It is outside the scope of my profession to comment on the legal definition of "extreme hardship[,"] however, I conclude that the psychological and emotional hardship Mrs. Avila will endure if Mr. Hernandez's deportation takes place would be extreme and exceptionally detrimental to her in particular, and the family as a whole.

(emphasis added). Dr. Wakefield also said that Mrs. Avila feels "trapped," which he believes to be "one of the most dangerous signs for suicide patients." Consequently, Dr. Wakefield declared that if Hernandez is removed, he would recommend that his mother be hospitalized.

The evidence in the record indicates that neither the IJ nor the BIA considered Dr. Wakefield's affidavits. A psychiatrist's opinion that Hernandez's mother will "likely . . . *attempt suicide*" is so highly probative of extreme hardship that it is difficult to imagine why both the IJ and the BIA failed to address this evidence specifically. *See, e.g., In re Mendez–Moralez*, 21 I. & N. Dec. 296, 303 (BIA 1996) (upholding an IJ's determination of extreme hardship where the alien's mother was disabled, had a history of depression, and had attempted

---

**2.** Though we agree with Hernandez's hardship argument with respect to the failure to consider Dr. Wakefield's affidavits, we disagree with his argument that the IJ improperly focused on *past* rather than *future* hardship. The IJ does mention the past hardship experienced by Hernandez's mother and sister when Hernandez spent time in Mexico and during his incarceration. While Hernandez is correct that the proper focus is on future hardship, we cannot say that the IJ erred by using information about past hardship to draw conclusions about the future hardship Hernandez's mother and sister might suffer if Hernandez is removed from the United States.

suicide). The failure to mention such crucial evidence makes it unlikely that the IJ or BIA actually considered Dr. Wakefield's affidavits.

In addition to the failure to mention Dr. Wakefield's affidavits, another aspect of the IJ's decision also suggests that the affidavits were not considered. The IJ's decision reflects a misconception about why Mrs. Avila would suffer hardship. As Dr. Wakefield explained in one of his affidavits, it was not the fact of temporary separation, but rather the prospect of a "permanent" separation from her son that would cause Mrs. Avila to "no longer [be] able to remain hopeful" and that would likely trigger a suicide attempt. The IJ, however, never addressed the significance of *permanent* separation. Instead, the IJ noted that Hernandez's mother could visit her permanently deported son in Mexico and could write to him and telephone him.

The BIA's decision likewise does not indicate that it considered Dr. Wakefield's affidavits. In his brief to the BIA, Hernandez argued that "[t]he IJ failed to evaluate the expert psychiatric opinion which establishes the atypically severe psychological effects Respondent's deportation would have on his mother." Despite the fact that Hernandez explicitly drew the BIA's attention to this evidence, the BIA's decision says nothing about Dr. Wakefield's affidavits. Instead the BIA's discussion of whether Hernandez's family would suffer extreme hardship simply concludes that Mrs. Avila did not need financial support from her son, and that the IJ's "factual findings were not clearly erroneous." The BIA's focus on this different,

and clearly less extreme, element of hardship makes it unlikely that it considered Dr. Wakefield's affidavits either.

In sum, given the startling information contained in Dr. Wakefield's affidavits, the IJ's and the BIA's failure to refer to the affidavits, the IJ's misconception about the nature and extent of Mrs. Avila's emotional hardship, and the BIA's mention of only financial hardship, we hold that Hernandez has overcome the presumption that Dr. Wakefield's psychiatric evidence was reviewed by the IJ or the BIA; therefore, Hernandez has established a violation of his due process rights.

To prevail on his due process challenge, Hernandez must also show prejudice. *Larita–Martinez*, 220 F.3d at 1095. The prejudice resulting from the failure to consider the psychiatric evidence of extreme hardship to Hernandez's mother is clear. Extreme hardship is an eligibility requirement for § 212(h) relief, and it is also a factor in the IJ's balance of the equities. *See Mendez–Moralez*, 21 I. & N. Dec. at 301. Dr. Wakefield's opinion is compelling evidence that Hernandez's mother would experience hardship beyond the ordinary consequences of a relative's removal from the United States. Had the IJ considered Dr. Wakefield's views, "the outcome of the proceedings may have been affected." *Colmenar v. I.N.S.*, 210 F.3d 967, 971 (9th Cir.2000). Accordingly, we find prejudice.[3]

Hernandez also alleges a number of other due process and other constitutional violations. In particular, Hernandez challenges the decision to transfer venue from Boise to Seattle,[4] the treatment of his conviction and *Alford* plea, the admission and

---

3. The government argues that Hernandez's decision to permit his removal to Mexico pending appeal undermines his claim of extreme hardship. We disagree. His choice of removal pending appeal over his continued imprisonment has no bearing on the hardship experienced by his relatives.

4. The IJ concluded that he lacked jurisdiction to transfer venue back to Boise because of the government's choice of detention location. This was an error. *See Garcia–Guzman v. Reno*, 65 F.Supp.2d 1077, 1092 (N.D.Cal. 1999) (explaining that "[w]hile it is true that an IJ cannot order the INS to change the

exclusion of certain affidavits and testimony, the IJ's consideration of allegedly irrelevant factors such as the use of a false social security number and his juvenile DUI arrest, the IJ's failure to credit him with not being a threat to national security, the IJ's disbelief of his stated reasons for leaving the United States in 1996, and the IJ's failure to keep a complete record of the proceedings. We conclude that any errors relating to these matters do not rise to the level of due process violations.

Thus, we grant Hernandez's petition with respect to his claim that his due process rights were violated by the IJ's and the BIA's failure to consider Dr. Wakefield's affidavits. We deny his petition with respect to his other claims and remand to the BIA for proceedings consistent with this disposition.

**PETITION GRANTED AND REMANDED.**

IKUTA, Circuit Judge, dissenting:

The majority here rules that Hernandez's right to due process was violated because the IJ and the BIA failed to consider Dr. Wakefield's affidavit. This conclusion is contrary to our case law, not supported by the record, and constitutes an intrusion "into the domain which Congress has set aside exclusively for the administrative agency." *See SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

Under our well-established case law, we presume that the IJ reviewed all the evidence in the record, even if the IJ and BIA do not mention every item. *Larita–Martinez v. INS*, 220 F.3d 1092, 1095–96 (9th Cir.2000) ("We embrace the view of our sister circuits and hold that an alien attempting to establish that the Board violated his right to due process by failing to consider relevant evidence must overcome the presumption that it did review the evidence."); *see also Almaghzar v. Gonzales*, 457 F.3d 915, 922 (9th Cir.2006) (rejecting due process claim based on the IJ's failure to discuss documentary evidence of torture); *Fernandez v. Gonzales*, 439 F.3d 592, 603 (9th Cir.2006) (rejecting claim that petitioner's due process right was violated by the BIA's failure to discuss new evidence); *Barraza Rivera v. INS*, 913 F.2d 1443, 1448–49 (9th Cir.1990). We have upheld this presumption of review except when an agency explicitly stated it was unwilling to consider petitioner's evidence. *See, e.g., Ramirez–Alejandre v. Ashcroft*, 320 F.3d 858, 872 (9th Cir.2003) (en banc) ("[T]he BIA affirmatively and categorically rejected consideration of supplemental evidence."), *superseded by regulation*, 8 C.F.R. § 1003.1(d)(3)(iv); *Zahedi v. INS*, 222 F.3d 1157, 1164–65 & n. 7 (9th Cir.2000) (holding that the IJ's explicit rejection of the validity of petitioner's evidence rebuts the presumption of review). This presumption of review is consistent with the rule in four of our sister circuits.[1]

---

place of detention, a motion to change venue is analytically distinct from detention since venue concerns only the place where *hearings* in the case shall take place" (internal citations omitted) (emphasis in original)). Nonetheless, we conclude that Hernandez's statutory right to counsel was not violated, as Hernandez was ably represented by Monica Schurtman and the Legal Aid Clinic of the University of Idaho College of Law. The venue decision also did not violate his right to due process, as it did not deny him a "full and fair hearing of his claims and a reasonable oppor-

tunity to present evidence on his behalf." *Colmenar*, 210 F.3d at 971.

1. *See, e.g., Morales v. INS*, 208 F.3d 323, 328 (1st Cir.2000) (holding that the BIA and the IJ are not required to " 'address specifically each claim the petitioner made or each piece of evidence the petitioner presented' ") (quoting *Martinez v. INS*, 970 F.2d 973, 976 (1st Cir.1992)); *Ivanishvili v. U.S. Dep't. of Justice*, 433 F.3d 332, 344 (2d Cir.2006) (holding there is "no authority supporting petitioner's contention that an IJ errs unless he specifical-

The majority gives three reasons for holding that Hernandez rebutted the presumption of review in this case. First, the majority states that the Wakefield affidavit's discussion of the mother's suicidal tendencies was crucial, and the IJ's failure to discuss this crucial evidence raises the inference that the evidence was not considered.[2] Second, the majority notes that the Wakefield affidavit discussed the mother's concern about permanent separation from her son, but the IJ did not address the significance of this permanent separation.[3] Finally, the majority notes that the BIA did not reference the affidavit's statements that Hernandez's deportation would have a severe psychological impact on Hernandez's mother.

In essence, the majority's three reasons boil down to a single point: neither the IJ nor the BIA mentioned Dr. Wakefield's affidavits and the purportedly crucial information it contains. As noted above, this is not enough to rebut the presumption of review. If a petitioner could rebut the presumption of review merely by showing that the IJ failed to mention a document that is important to the petitioner's claim for relief, the presumption would be meaningless. Under the majority's approach, *Larita–Martinez* would be limited to the presumption that the agency has reviewed only the *unimportant* parts of the record. Of course, no court could find a due process violation based on a charge that the IJ and BIA overlooked evidence that is immaterial, as there could be no showing of prejudice. *See, e.g., Colmenar v. INS,* 210 F.3d 967, 971 (9th Cir.2000) (there is a due process violation only if the outcome of the proceeding may have been affected by the alleged error).

In ignoring the presumption of review, the majority erodes the bedrock principle of administrative law that "agencies are entitled to a presumption that they 'act properly and according to law.'" *Kohli v. Gonzales,* 473 F.3d 1061, 1068 (9th Cir. 2007) (quoting *FCC v. Schreiber,* 381 U.S. 279, 296, 85 S.Ct. 1459, 14 L.Ed.2d 383

ly discusses, evaluates, and accepts or rejects each piece of documentary evidence submitted"); *Kamara v. Attorney Gen. of U.S.,* 420 F.3d 202, 212 (3d Cir.2005) ("Agency action is entitled to a presumption of regularity, and it is the petitioner's burden to show that the BIA did not review the record when it considered the appeal."); *Man v. INS,* 69 F.3d 835, 838 (7th Cir.1995) ("[A]bsent evidence to the contrary, we assume that the BIA reviewed the specific findings of the immigration judge in light of the record....").

**2.** The majority could not hold that the IJ failed to consider the *issue* of the mother's suicidal tendencies. The IJ discussed Hernandez's concern about this issue in some detail. The IJ also listed a declaration to that effect from Dr. Wakefield as being part of the record. However, the IJ found that the evidence did not establish the "extreme hardship" necessary to meet the standard in 8 U.S.C. § 1182(h)(1)(B). The IJ reasoned that Hernandez "has not lived with his mother for years and he has not provided her with meaningful emotional or financial support.... [Hernandez's] mother can legally travel to Mexico to visit her son which she did when he was living in Mexico.... [T]he court finds that the hardship suffered by [Hernandez's] daughter and mother is not different from the ordinary hardship of separation of a family member when that family member is deported or removed from the United States." The BIA affirmed the IJ's determination as being based on facts that were not clearly erroneous. These findings are binding on us. 8 U.S.C. § 1252(b)(4)(B). Moreover, they are confirmed by Hernandez's subsequent decision to allow himself to be removed to Mexico (a fact admittedly not before the BIA when it affirmed the IJ's factual findings), which indicates that Hernandez's assessment of his mother's condition was similar to the IJ's.

**3.** Rather, the IJ may have rejected Dr. Wakefield's characterization of the separation as being permanent. The IJ noted that Hernandez's mother would be free to visit her son in Mexico and to communicate with him via telephone.

(1965)). "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chem. Found., Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926); *see also INS v. Miranda,* 459 U.S. 14, 18, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982). Our presumption that the agency properly reviewed the evidence in the record is based on this principle. *See Larita–Martinez,* 220 F.3d at 1095 ("[I]t is so expected that a court would review all relevant materials in the record that reviewing courts have presumed it."). The majority here presumes instead that the IJ and BIA failed to act properly, despite no direct evidence supporting this conclusion and all signs to the contrary.

In sum, there is no basis in this case for rebutting the presumption that the IJ and the BIA considered Dr. Wakefield's affidavit. Nor is there support for the majority's conclusion that the agency's failure to discuss the substance of the single affidavit made the proceeding "so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Reyes–Melendez v. INS,* 342 F.3d 1001, 1006 (9th Cir.2003) (internal quotations omitted). Here, Hernandez was represented by counsel who vigorously argued his case. He introduced a substantial amount of evidence, including testimony from witnesses, and received a full hearing from an IJ who is not alleged to be biased. Both the IJ and the BIA provided a complete and careful decision. An error that could turn this manifestly fair proceeding into a fundamentally unfair one would have to be egregious indeed. There is no such error in

this case and therefore no due process violation here.