**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2259
_____

JULIO FREZA,
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
(Agency No. A078-833-855)

Immigration Judge: Jason L. Pope
_____

Argued: June 7, 2022

Before: AMBRO, RENDELL, and FUENTES,
*Circuit Judges*.

(Filed: September 15, 2022)
_____

Peter R. Crossley          [**Argued**]
Rebecca Hufstader
Legal Services of New Jersey
100 Metroplex Drive, Suite 402
Edison, NJ 08817
     *Counsel for Petitioner*

Brendan P. Hogan          [**Argued**]
Marie V. Robinson
Michele Y. F. Sarko
Office of Immigration Litigation
United States Department of Justice
PO Box 878, Ben Franklin Station
Washington, DC 20044
     *Counsel for Respondent*

_____

OPINION OF THE COURT

_____

FUENTES, *Circuit Judge*.

Julio Freza petitions for review of a decision of a final order of removal issued by the Board of Immigration Appeals ("BIA"), which affirmed the Immigration Judge's ("IJ") decision that Freza was removable and ineligible for relief under the Convention Against Torture ("CAT"). The primary issue on appeal is whether the IJ's denial of a 30-day continuance for Freza's counsel to prepare to adequately represent him violated Freza's right to counsel. Because we conclude that it did, we will grant Freza's petition for review, vacate the BIA's decision, and remand for further proceedings consistent with this opinion.

## I.

Freza is a native and citizen of the Dominican Republic who entered the United States in 1998. He adjusted status to lawful permanent resident in March 2004. In June 2012, he was arrested and eventually convicted in the Somerset County Superior Court of New Jersey for one count of robbery, in violation of N.J. Stat. Ann. § 2C:15-1; two counts of aggravated assault with a firearm, in violation of N.J. Stat. Ann. § 2C:12-1(b)(4); one count of burglary, in violation of N.J. Stat. Ann. § 2C:18-2; and one count of possession of a weapon for an unlawful purpose, in violation of N.J. Stat. Ann. § 2C:39-4(a).[1] In December 2015, he was sentenced to ten years' imprisonment for these offenses. On March 22, 2019, while Freza was serving his ten-year sentence at Northern State Prison in New Jersey ("Northern State"), the Department of Homeland Security ("DHS") filed a Notice to Appear ("NTA") and initiated removal proceedings against him. He was charged as removeable on two grounds: (1) under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony, specifically a theft offense as defined by 8 U.S.C. § 1101(a)(43)(G); and (2) under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony of a crime of violence, as defined by 8 U.S.C. § 1101(a)(43)(F). DHS later amended the NTA to add a third charge of removability under 8 U.S.C § 1227(a)(2)(C), alleging that Freza was removable for having been convicted of a firearms offense.

---

[1] The original charges also included criminal restraint, in violation of N.J. Stat. Ann. § 2C:13-2(a); and unlawful possession of a weapon, in violation of N.J. Stat. Ann. § 2C:39-5(c)(1).

Initially, Freza's removal proceedings took place through the Institutional Hearing Program docket at the Elizabeth Immigration Court ("EIC") in Elizabeth, New Jersey. Freza's first master calendar hearing occurred on January 28, 2020. The IJ advised Freza of his right to be represented and gave him more time to find an attorney. Freza told the IJ that he had attempted to contact pro bono legal organizations, but none could take his case at the time. He also advised the IJ that he could not hire a lawyer because he had been in prison for seven years and that had "deflated [his] resources," but that he "would definitely try to get one."[2] Freza's second master calendar hearing occurred on February 18, 2020. The IJ proceeded with Freza pro se, as he had still been unable to retain an attorney. The IJ sustained the first two charges of removability but dismissed the third. On March 18, 2020, Freza filed an application for asylum, withholding of removal, and relief under the CAT. Due to staffing shortages at the prison resulting from the COVID-19 pandemic, Northern State was unable to produce Freza for his next two video hearings at the EIC scheduled for April 21, 2020 and May 19, 2020. The IJ was thus forced to continue Freza's case until July 28, 2020. That hearing was continued as well due to audio problems at the EIC. The IJ then rescheduled Freza's hearing for September 22, 2020. On that day, Northern State advised the court that it could not produce Freza again. Freza's third master calendar hearing finally took place on October 20, 2020, with Freza appearing pro se via video. The merits hearing on his application for relief was eventually set for December 16, 2020. On November 4, 2020, Freza was transferred to U.S. Immigration and Customs Enforcement ("ICE") custody at the Essex County Correctional Facility

---

[2] A.R. 130.

("ECCF") in Newark, New Jersey. The day of Freza's merits hearing, the EIC closed due to a snowstorm, forcing the hearing to be canceled. Freza's merits hearing was rescheduled for January 5, 2021.

Rebecca Wyss of the American Friends Service Committee, a pro bono legal services provider in New Jersey, first learned of Freza on December 30, 2020 and arranged with ECCF to speak with him at the facility's earliest available appointment, which was the day before the rescheduled merits hearing. On January 5, 2021, Wyss filed a notice of appearance and a written motion to continue Freza's merits hearing for at least 30 days so she could prepare to adequately represent Freza. At the merits hearing, Wyss explained that she had been retained approximately 24 hours before and had not had an opportunity to review the record. She further argued that Freza had difficulties getting evidence for his case and noted that he had suffered from COVID-19 for "quite a period."[3] She also asserted that, while Freza was at Northern State, he did not have access to certain pro bono legal services that are available to individuals in ICE custody in New Jersey. DHS opposed the motion. The IJ denied the motion to continue, finding that Freza had failed to establish good cause to continue the case. The IJ relied on the fact that Freza had been aware of his merits hearing "for quite some time" given that it was originally scheduled for December 16, 2020 and he had been in ICE custody for more than two months.[4] Wyss moved to withdraw since she could not "provide effective assistance of counsel," and her motion was granted.[5] Freza then asked the IJ for an

---

[3] A.R. 180.
[4] A.R. 185.
[5] A.R. 186.

5

opportunity to try to obtain new counsel, but the IJ denied his request, so the merits hearing continued with Freza proceeding pro se. During the merits hearing, Freza testified that he feared Oliver Almonte, his co-defendant from his criminal case, who had been deported to the Dominican Republic in early 2012. He testified that while he was in criminal custody awaiting trial in August 2012, he was brutally attacked by other inmates who were associated with Almonte. According to Freza, he was seriously injured in the attack and suffered a broken jaw. He also testified that a couple of months prior, Almonte threatened his girlfriend by saying "that he had two bullets, one for her, one for me."[6] Freza submitted documentary evidence including: (1) a partial copy of the sentencing memorandum from his criminal case; (2) a copy of the news article covering the attack on him; (3) character letters from family and friends; and (4) certificates from courses he took at Northern State. The IJ entered the State Department's Dominican Republic 2019 Human Rights Report into the record on Freza's behalf. In an oral decision issued at the hearing, the IJ determined that Freza's conviction for robbery constituted an aggravated felony and a particularly serious crime, and that he was thus ineligible for asylum and withholding of removal.[7] The IJ also denied Freza's application for deferral of removal under the CAT, concluding that he had failed to show that he would more likely than not be tortured upon his return to the Dominican Republic. Specifically, the IJ found that the attack on Freza in the United States "was too attenuated to conclude that the respondent would be harmed by anybody associated with Mr.

---

[6] A.R. 201.

[7] Freza does not appeal the IJ's decision concerning his ineligibility for asylum or withholding of removal.

Almonte . . . if he is returned to the Dominican Republic."[8]  The IJ primarily relied on the fact that all contact with Almonte had ceased back in 2012 and that, while Freza "believes Mr. Almonte was deported back to the Dominican Republic . . . [,] he has no direct knowledge about his whereabouts at this time and does not even know if Mr. Almonte is still alive or still in the Dominican Republic."[9]  The IJ also concluded that Freza failed to demonstrate that the Dominican government would consent or acquiesce to the feared torturous acts.  As a result, the IJ ordered Freza removed to the Dominican Republic.  Freza timely appealed the IJ's decision to the BIA, which dismissed Freza's appeal on June 17, 2021.  First, the BIA agreed that Freza was removable as a noncitizen convicted of an aggravated felony.  Second, the BIA agreed that Freza was ineligible for asylum or withholding of removal because his robbery conviction was a particularly serious crime.  Third, the BIA agreed with the IJ that Freza had not established good cause for a continuance of his merits hearing.  Specifically, the BIA noted that Freza's first hearing was nearly a year prior to his merits hearing and his case was continued six times after the initial hearing.  The BIA also dismissed Freza's due process arguments, including that the IJ failed to fully develop the record.  Lastly, the BIA agreed that Freza failed to qualify for CAT deferral.  This petition for review followed.

## II.

We have jurisdiction to review final orders of the BIA under 8 U.S.C. § 1252(a)(1).  However, because Freza is subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii), "the

---

[8] A.R. 105–06.
[9] A.R. 106.

7

statute constrains our jurisdiction to 'constitutional claims or questions of law.'"[10]  We exercise de novo review over these claims or questions.[11]  "Where the BIA affirms and partially reiterates the IJ's discussions and determinations, we look to both decisions."[12]

### III.

Freza raises two principal arguments on appeal: (1) that the IJ violated his due process right to a fundamentally fair hearing and his statutory right to counsel by denying his counsel's request for a continuance so that she could prepare to adequately represent him; and (2) that the BIA and the IJ misapplied the legal standard in evaluating his application for CAT relief.  Because we agree with Freza on the first issue, our analysis will start and end there.

### A.

The Due Process Clause of the Fifth Amendment guarantees noncitizens "the right to effective assistance of counsel in removal proceedings" and a "fundamentally fair hearing."[13]  An individual's right to counsel is further protected by statute: "the alien shall have the privilege of being represented, at no expense to the Government, by counsel of

---

[10] *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017) (quoting *Pierre v. Att'y Gen.*, 528 F.3d 180, 184 (3d Cir. 2008) (en banc)); 8 U.S.C. §§ 1252(a)(2)(C), (D).

[11] *Myrie*, 855 F.3d at 515.

[12] *Id.* (citing *Sandie v. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir. 2009)).

[13] *Calderon-Rosas v. Att'y Gen.*, 957 F.3d 378, 385 (3d Cir. 2020).

the alien's choosing who is authorized to practice in such proceedings."[14] This statutory right is also reflected in the immigration regulations.[15]

A noncitizen asserting a due process violation must generally show (1) "that he was prevented from reasonably presenting his case," and (2) "that substantial prejudice resulted."[16] To show substantial prejudice, the noncitizen must establish "that the infraction ha[d] the *potential* for affecting the outcome" of their removal proceedings.[17]

To determine whether a noncitizen was prejudiced, we must "consider the record in relation to the potential grounds asserted for relief," here CAT protection.[18] A petitioner seeking CAT protection must demonstrate that "it is more likely than not that he . . . would be tortured" if returned to his country of origin.[19] He must show, in other words, that "severe pain or suffering" will likely be "inflicted by or at the

---

[14] 8 U.S.C. § 1229a(b)(4)(A); *see also* 8 U.S.C. § 1362 ("In any removal proceedings before an immigration judge . . . the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.").

[15] *See, e.g.*, 8 C.F.R. § 292.5 ("Whenever an examination is provided for in this chapter, the person involved shall have the right to be represented by an attorney. . . .").

[16] *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 213 (3d Cir. 2017).

[17] *Id.* (internal citation and quotation marks omitted).

[18] *Id.*

[19] *Kaita v. Att'y Gen.*, 522 F.3d 288, 300 (3d Cir. 2008).

instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."[20]

However, proving substantial prejudice is not always required. "[W]hen an agency promulgates a regulation protecting fundamental statutory or constitutional rights of parties appearing before it, the agency must comply with that regulation. Failure to comply will merit invalidation of the challenged agency action without regard to whether the alleged violation has substantially prejudiced the complaining party."[21] We have previously recognized that the right to counsel is fundamental to the proceeding's fairness and that "[t]he right to counsel is a particularly important procedural safeguard because of the grave consequences of removal."[22]

Freza's "due process claim is inextricably linked with the [IJ's] denial of the continuance request."[23] Freza's "assertion that his right to counsel was violated is based solely on the [IJ's] decision to deny the continuance request."[24] Thus, we treat "the two claims [as] one and the same."[25] The question of whether the denial of a continuance constitutes a violation of Freza's due process and statutory right to counsel, and was therefore an abuse of discretion, "must be resolved on a case by case basis according to the facts and circumstances of each case."[26]

---

[20] *Id.* (citations omitted).

[21] *Leslie v. Att'y Gen.*, 611 F.3d 171, 180 (3d Cir. 2010).

[22] *Id.* at 181.

[23] *Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 373 (3d Cir. 2003).

[24] *Id.* at 373–74.

[25] *Id.* at 374.

[26] *Id.* at 377 (internal citation and quotation marks omitted).

B.

We are hard pressed to find a more compelling set of facts constituting a violation of Freza's due process and statutory right to counsel. After Freza diligently sought counsel while incarcerated, he was finally able to obtain counsel the day before his rescheduled merits hearing. However, when that counsel moved for a 30-day continuance so that she could prepare to adequately represent him, the IJ denied the motion, and the BIA affirmed, relying primarily on the fact that Freza's initial hearing had taken place almost a year before. The IJ and BIA plainly ignored that the delay was due to circumstances completely outside Freza's control. Indeed, this was Freza's first request for a continuance of his merits hearing and there was no evidence to indicate that the request was a dilatory tactic by Freza or his counsel.[27] In fact, it was reasonable that counsel would request such a continuance, as she had only met with Freza for the first time less than 24 hours before the merits hearing and she had not had time to review the record. Denying the continuance under these circumstances was clearly an abuse of discretion and a violation of Freza's due process and statutory right to counsel.

Contrary to the Government's assertions, this case closely tracks *Chlomos v. INS*, 516 F.2d 310 (3d Cir. 1975). There, we held that a petitioner's right to counsel was violated where the petitioner clearly expressed his desire to be represented by counsel but ultimately went unrepresented because he was unable to contact his lawyer, at least in part due

---

[27] *Cf. Chlomos v. INS*, 516 F.2d 310, 314 (3d Cir. 1975) ("We do not condone unnecessary delay or dilatory tactics through the ruse of counsel's unavailability.").

11

to being incarcerated and because the IJ had failed to notify his counsel.[28]  We explained that

> [w]hile two continuances were granted in this case, as a practical matter, they were inadequate to make the services of his chosen counsel available to petitioner.  There was no necessity for the hasty hearing by the immigration judge, and arrangements could have been made which would have been reasonable for both the government and petitioner's counsel.  We do not condone unnecessary delay or dilatory tactics through the ruse of counsel's unavailability.  Efficient management of the administrative process can prevent such abuse when it appears.  That did not appear to be a problem here.[29]

Similarly, here "[t]here was no necessity for the hasty hearing by the immigration judge," and other "reasonable" "arrangements could have been made."[30]  In their decisions, the IJ and BIA rely primarily on the fact that there was more than a year between Freza's initial hearing and his merits hearing, but ignore that this was due to reasons completely out of Freza's control.  He was not engaging in "dilatory tactics through the ruse of counsel's unavailability."[31]  The IJ and the

---

[28] *Id.* at 312–14.

[29] *Id.* at 314.

[30] *Id.*

[31] *Id.*

BIA also ignore the realities of obtaining legal counsel while detained.[32]

The Government's reliance on *Ponce-Leiva v. Ashcroft*, 331 F.3d 369 (3d Cir. 2003), is misplaced. In that case, we held that a petitioner's right to counsel was not violated where the IJ denied a request for a continuance from petitioner's counsel and proceeded with petitioner's merits hearing without counsel because counsel had been informed of the date of the hearing eight months prior and had agreed to that date.[33] We explained that petitioner's asylum claim lacked merit, and that it was "reasonable and proper" for the IJ to consider this "apparent lack of merit . . . when deciding to proceed without counsel."[34]

The facts of this case are plainly distinguishable. Unlike the petitioner in *Ponce-Leiva*, Freza was not previously represented. And, unlike counsel in *Ponce-Leiva* who inexplicably missed his client's hearing, Freza's chosen

---

[32] *See Hernandez Lara v. Barr*, 962 F.3d 45, 55 (1st Cir. 2020) ("[D]ata shows that detention significantly decreases the ability of respondents in immigration proceedings to obtain counsel." (citing Ingrid V. Eagly & Steven Shafer, *A National Study of Access to Counsel in Immigration Court*, 164 U. Pa. L. Rev. 1, 32 (2015)); *see also Usubakunov v. Garland*, 16 F.4th 1299, 1305 (9th Cir. 2021) (describing a detained applicant's process of obtaining counsel as "long and frustrating").

[33] *Ponce-Leiva*, 331 F.3d at 375.

[34] *Id.* at 377 ("It was clear at the outset . . . that [petitioner's] claim for asylum was based solely on economic reasons, and therefore would not merit relief.").

13

counsel appeared and requested 30 days to prepare to adequately represent him. The IJ here abused his discretion in denying that request, thus rendering Freza's right to counsel meaningless. Further, although the BIA ultimately concluded that Freza's claim lacked merit, the IJ did not consider a facial lack of merit when deciding to deny Freza's counsel's request for a 30-day continuance.[35]

The Government also argues that because the IJ "advised Freza of his right to counsel and ensured that he had received the free legal services list at his very first hearing on January 28, 2020" and "continued Freza's hearing at his request so he could attempt to obtain counsel," the agency did not violate Freza's statutory and regulatory right to counsel.[36] We disagree. The Government is right that the IJ initially complied with Freza's statutory and regulatory right to counsel. However, that does not preclude our finding that the IJ later violated those rights when the IJ denied a motion for a continuance for a mere 30 days so that Freza's newly obtained counsel could prepare to adequately represent him, particularly when she had already filed an appearance and was present at the hearing. Thus, we hold that, under the particular facts of this case, no showing of prejudice is required because the IJ violated Freza's statutory and regulatory rights.

Even assuming *arguendo* that Freza needs to show substantial prejudice, he only needs to show that the presence of counsel "had the *potential* for affecting the outcome of the

---

[35] *Cf. id.* We express no view on the merits of Freza's CAT claim.
[36] Resp. Br. at 32.

14

proceedings."[37]  This he has done.  At his merits hearing, he testified that he was beaten up by his criminal co-defendant, Oliver Almonte.  He also testified that Almonte threatened his girlfriend.  The IJ asked him how he knew Almonte was still alive, and whether he knew if Almonte worked for the Dominican government.  Counsel for the Government also asked Freza whether he had "any evidence that Mr. Almonte exists."[38]  Freza stated that he did not know whether Almonte was still alive, did not know whether Almonte worked for the Dominican government, and did not have proof of Almonte's existence.  In denying relief, the IJ recognized that "some of the things that happened have been harm here in the United States, in the Somerset County Jail in 2012 by individuals who may have been connected to Mr. Almonte."[39]  Ultimately, the IJ concluded "that [was] too attenuated to conclude that the respondent would be harmed by anybody associated with Mr. Almonte."[40]  The IJ relied in part on the fact that Freza "has no direct knowledge about [Mr. Almonte's] whereabouts at this time and does not even know if Mr. Almonte is still alive or still in the Dominican Republic."[41]  Counsel for Freza could have obtained documentation regarding Almonte's whereabouts and presented this information to the IJ.  The presence of counsel thus "ha[d] the *potential* for affecting the outcome."[42]

---

[37] *Serrano-Alberto*, 859 F.3d at 213.

[38] A.R. 205.

[39] A.R. 105.

[40] A.R. at 106.

[41] *Id.*

[42] *Serrano-Alberto*, 859 F.3d at 213.  In a footnote, the Government asserts that Freza has waived his argument that "[c]ounsel could have investigated Almonte's whereabouts"

15

Lastly, the Government asserts that Freza failed to show that the IJ abused his discretion in denying Freza's motion to continue. As discussed above, Freza's due process claim is treated the same as the IJ's denial of the request for a continuance. Because we conclude that the IJ violated Freza's due process and statutory right to counsel in denying Freza's motion to continue, it follows that the IJ abused his discretion in denying the motion to continue.

---

and "obtained evidence that Mr. Almonte was deported back to the Dominican Republic in 2012" by failing to raise it before the BIA. Resp. Br. at 29 n.11 (quoting Pet'r. Br. at 34, 36). However, as Freza correctly points out, he argued to the BIA that his counsel could have obtained additional evidence. The evidence cited in his appellate brief is a specific type of evidence that his counsel could have obtained, and thus Freza has not waived this argument. *See United States v. Joseph*, 730 F.3d 336, (3d Cir. 2013) ("Parties are free . . . to . . . more fully explain an argument on appeal than they did in the District Court."). The Government also asserts that "[i]n any event, that argument is besides the point" because "the IJ found Freza's testimony that Freza believed that Almonte was in the Dominican Republic to be credible." Resp. Br. at 29 n.11. Although the IJ entered a favorable credibility determination, in determining that Freza was not eligible for CAT relief, the IJ still faulted Freza for not knowing whether Almonte was alive and whether he worked for the Dominican government.

### III.

For these reasons, we will grant Freza's petition for review, vacate the BIA's decision, and remand to the BIA for further proceedings consistent with this opinion.