NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1789
_____

LUISA JANNETH TACURI YUQUI;
NESTOR BOLIVAR SINCHI UDAY,
                                        Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
(BIA Nos. A202-042-514, A088-311-009)
Immigration Judge: Tamar H. Wilson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 8, 2024

Before:  HARDIMAN, SCIRICA, and RENDELL, *Circuit Judges*.

(Filed: July 31, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Luisa Janneth Tacuri Yuqui ("Ms. Tacuri") and Nestor Bolivar Sinchi Uday ("Mr. Sinchi") (collectively "petitioners") petition for review of a decision of the Board of Immigration Appeals ("BIA") affirming the denial of their request for cancellation of removal under 8 U.S.C. § 1229b(b)(1) by the Immigration Judge ("IJ"). The BIA found that petitioners failed to demonstrate the requisite "exceptional and extremely unusual hardship" to their qualifying relative. 8 U.S.C. § 1229b(b)(1)(D). Petitioners argue that: (1) the agency violated their due process rights by disregarding expert evidence and by preventing counsel from providing a closing statement; (2) the BIA failed to use the proper standard of review in assessing the IJ's credibility determinations; and (3) the BIA erred by declining to consider the potential hardship that petitioners' son would face if he relocated to Ecuador. For the following reasons, we will dismiss the petition for review.

I.

Because we write primarily for the parties, who are familiar with the background of this case, we will recite only the facts pertinent to our disposition. Ms. Tacuri and Mr. Sinchi are currently married and are both citizens of Ecuador. Ms. Tacuri entered the United States in February 1998, and Mr. Sinchi entered the United States in March 1996, both without admission or parole after inspection by immigration officials.

In July 2016 and September 2017, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") commencing removal proceedings against petitioners separately. DHS charged that petitioners are subject to removal pursuant to Section

2

212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C.

§ 1182(a)(6)(A)(i), as noncitizens who are "present in the United States without being

admitted or paroled, or who arrive[d] in the United States at any time or place other than

as designated by the Attorney General." *Id.*[1]

Petitioners appeared before the Immigration Judge in May 2019. They sought

relief in the form of Cancellation of Removal for Certain Non-Permanent Residents

pursuant to Section 240A(b)(1) of the INA, 8 U.S.C. § 1229b(b)(1). As grounds for relief,

petitioners testified that their removal to Ecuador would create an exceptional and

extremely unusual hardship on their son, Anthony, a United States citizen.

On May 2, 2019, petitioners testified in support of their applications at a hearing

before the IJ. During the hearing, Ms. Tacuri testified that their son was diagnosed with

attention deficit hyperactivity disorder ("ADHD") when he was a child. According to Ms.

Tacuri, Anthony continues to take medication to treat the condition and visits a

neurologist every three months. Petitioners currently pay for Anthony's living expenses

because he is unemployed and a full-time college student, and his education is paid for

with grants. Ms. Tacuri also testified that if she were removed to Ecuador, she would

have to take Anthony with her because he "couldn't live alone by himself." AR 210.

Finally, Ms. Tacuri testified that, a year prior to the hearing, the family had met with a

clinical psychologist, Dr. Jaime Carcamo, approximately three times for a psychological

---

[1] In April 2018, Mr. Sinchi filed a motion to consolidate his case with Ms. Tacuri's
because they were married, both sought cancellation of removal for non-permanent
residents, and shared the same qualifying relative.

3

evaluation to determine how Anthony would be affected if petitioners were removed to Ecuador.

Mr. Sinchi testified that he has three brothers who reside in the United States who he did not see often. Mr. Sinchi also stated that if he were to be removed to Ecuador, he would not leave Anthony with one of his brothers because Anthony "doesn't get along with them." AR 279.

Petitioners' son testified that, at the time of the hearing, he was eighteen years old and enrolled as a full-time, first-year student in community college. Anthony testified that he had traveled to Ecuador without his parents when he was ten years old, but the trip "didn't go well" because he did not have his parents with him and the food made him "really, really sick." AR 292. When asked if he would remain in the United States or move to Ecuador if petitioners were removed, Anthony testified that he "would stay here because it's better opportunities," but noted that it would be hard to motivate himself without his parents. AR 293–96.

Petitioners also submitted Dr. Carcamo's psychological assessment of Anthony to the IJ. The expert's report analyzed Anthony's medical and family history. Dr. Carcamo determined that Anthony suffers from ADHD and migraines and concluded that:

> Anthony is particularly vulnerable to experiencing further severe psychological stress and suffering in the form of psychological and somatic symptoms that are typically seen in individuals that in their childhood experience a stressful and drastic change such as loss, abandonment, familial separation in living environments. . . . Anthony would suffer emotionally from the experience of a drastic change in his family life. A separation from his mother would likely cause Anthony to feel insecure, frightened and helpless. The culminating effects of

4

> this entire scenario whether it be a separation from his mother or a relocation to Ecuador could result in the developing of long-lasting traumatic experiences for Anthony.

AR 872.

At the end of the hearing, petitioners' counsel requested to submit a written closing statement. Specifically, counsel stated, "Normally I will ask to give a closing, but given the time, if needed I will request leave to submit a written closing. I believe the issues that have been raised in this hearing are quite complex, and I would like to have a chance to address those if needed." AR 299–300. The IJ denied the request, stating, "I understand, but I'm not going to grant that request, and I'm not going to allow closings today. It's not something that's required, and . . . I've heard enough information, and as I previously said, I evaluated all of the documents that have been submitted as well." AR 300.

On May 2, 2019, the IJ denied petitioners' applications for relief, reasoning that petitioners failed to demonstrate that their removal would impose an exceptional and extremely unusual hardship on their son, as required by the statute. The IJ determined that petitioners and their son provided credible testimony. The IJ also concluded that Anthony "has ADHD," "has struggled [] due to this illness," and "[w]ith the help of his parents, he has successfully managed his ADHD and is on the path to becoming a responsible, contributing member of society." AR 128. However, the IJ did not find Dr. Carcamo credible because "he only met with Anthony twice and once over the phone [] for short periods of time," and "exhibited bias in his evaluations." *Id.*

Petitioners appealed the IJ's decision to the BIA. The BIA dismissed petitioners'

appeal. The BIA decision affirmed the IJ's determination that petitioners failed to meet their burden of proof for cancellation of removal.[2] Petitioners subsequently filed a petition for review before this Court.

## II.

The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have jurisdiction to review final orders from the BIA under 8 U.S.C. § 1252(a).[3] While the jurisdictional statute "precludes judicial review of factual findings that underlie a denial of relief," *Patel v. Garland*, 596 U.S. 328, 331 (2022), it preserves review of constitutional claims or questions of law which "includes the application of a legal standard to undisputed or established facts," *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 225 (2020). The statutory criterion of "exceptional and extremely unusual hardship" required for cancellation of removal "is a question of law over which § 1252(a)(2)(D) provides judicial review." *Wilkinson v. Garland*, 601 U.S. 209, 217 (2024) (quotation marks and alterations omitted).

We review the agency's findings of fact "under the deferential substantial evidence standard," *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001), "and we review legal conclusions de novo, subject to established rules of deference," *Da Silva v.*

---

[2] In its decision, the BIA noted that petitioners failed to argue that their son would return to Ecuador with them and suffer hardship in Ecuador. Since the argument was not raised on appeal, the BIA deemed the matter waived and declined to consider hardship to petitioners' son in Ecuador.

[3] We review the BIA's opinion, as well as the parts of the IJ's opinion adopted by the BIA. *See Patel v. Att'y Gen.*, 599 F.3d 295, 297 (3d Cir. 2010).

6

*Att'y Gen.*, 948 F.3d 629, 633 (3d Cir. 2020).

III.

A noncitizen found to be removable may seek relief in the form of cancellation of removal. *See* 8 U.S.C. §§ 1229b(a)–(b). To be eligible for hardship-based cancellation of removal, a petitioner must: (1) have "been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;" (2) be "a person of good moral character during such period;" (3) "not been convicted of an offense" that bars such discretionary relief; and (4) establish "that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1). A finding of statutory eligibility allows the IJ to grant or deny relief as a matter of discretion. 8 C.F.R. § 1240.8(d).

Here, the BIA denied petitioners' application for cancellation of removal because they did not establish that their removal would result in exceptional and extremely unusual hardship to their qualifying relative. Petitioners challenge the agency's decision on three grounds. Specifically, petitioners claim: (1) the agency violated their due process rights by disregarding their expert's report and by preventing counsel from providing a closing statement; (2) the BIA failed to use the proper standard of review in assessing the IJ's credibility determinations; and (3) the BIA erred by declining to consider the potential hardship that petitioners' son would face by relocating to Ecuador. We disagree and address each argument in turn.

7

A.

Petitioners first claim that they were denied due process "by the arbitrary manner in which their expert's evidence was disregarded." Petitioners' Br. 11. Namely, petitioners contend the IJ's adverse credibility determination was "arbitrary and without basis" because "the IJ had already found the [p]etitioners to have been credible, and their testimony closely tracked the expert's report." *Id.* at 9 (citations omitted). This "effectively prevented" them "from introducing their expert evidence," and the BIA thus erred in finding no due process violation. *Id.* But this argument fails for two reasons.

*First*, we lack jurisdiction to consider factual challenges to the agency's adverse credibility findings.[4] *See Patel*, 596 U.S. at 339 (noting that Section 1252(a)(2)(B)(i)'s jurisdictional bar "plainly includes factual findings"). Petitioners' argument boils down to a claim that the agency improperly weighed the expert evidence in evaluating whether their son would suffer an "exceptional and extremely unusual hardship." 8 U.S.C. § 1229b(b)(1)(D). But petitioners' argument falls squarely within Section

---

[4] While this appeal was pending, the Supreme Court clarified that "the application of the statutory 'exceptional and extremely unusual hardship' standard to a given set of facts presents a mixed question of law and fact" subject to judicial review under Section 1229b(b)(1)(D). *Wilkinson*, 601 U.S. at 221. However, we are "still without jurisdiction to review a factual question raised in an application for discretionary relief." *Id.* at 222.

Thus, while the "facts underlying any determination on cancellation of removal [] remain unreviewable," the "question whether those established facts satisfy the statutory eligibility standard is subject to judicial review." *Id.* at 225. And "[b]ecause this mixed question is primarily factual, that review is deferential." *Id.*

Respondent contends *Wilkinson* "has no practical effect on this case because [p]etitioners raise no challenge to the substance of the agency's hardship determination." Respondent's Br. 16 n.6. We agree. Because petitioners challenge the agency's fact-finding, we conclude that *Wilkinson* does not affect our disposition.

1251(a)(2)(B)(i)'s jurisdictional bar because it concerns the IJ's factual determinations. *See Wilkinson*, 601 U.S. at 225 ("For instance, an IJ's factfinding on credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides remain unreviewable.").

*Second*, petitioners' due process claim fails because, even assuming the IJ erred in making an adverse credibility determination of petitioners' expert witness, the BIA remedied the issue and petitioners cannot establish prejudice. As a matter of due process, noncitizens have a right to "a full and fair hearing, which includes a neutral and impartial arbiter of the merits of his claim and a reasonable opportunity to present evidence on his behalf." *Abulashvili v. Att'y Gen.*, 663 F.3d 197, 207 (3d Cir. 2011) (quotation marks and alterations omitted). "A noncitizen asserting a due process violation must generally show (1) 'that he was prevented from reasonably presenting his case,' and (2) 'that substantial prejudice resulted.'" *Freza v. Att'y Gen.*, 49 F.4th 293, 298 (3d Cir. 2022) (quoting *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 213 (3d Cir. 2017)). "To show substantial prejudice, the noncitizen must establish 'that the infraction had the *potential* for affecting the outcome' of their removal proceedings." *Id.* (quoting *Serrano-Alberto*, 859 F.3d at 213) (alterations omitted).

Here, the BIA's decision specifically noted it was "unnecessary" to resolve petitioners' challenge to the IJ's credibility finding because, "even affording the expert's testimony full weight, and assuming that the facts presented by the expert are true, [it did] not find that the [petitioners] established the requisite exceptional and extremely unusual hardship to their son." AR 5. Thus, petitioners cannot show that any deficiency in the IJ's

9

credibility determination had "the *potential* for affecting the outcome" of the proceedings. *Freza*, 49 F.4th at 301 (quotation marks omitted). "In the absence of prejudice, [petitioners were] not deprived of due process by the alleged errors." *Calderon-Rosas v. Att'y Gen.*, 957 F.3d 378, 390 (3d Cir. 2020).

Petitioners additionally claim they were denied due process "by the IJ's denial to allow a closing argument." Petitioners' Br. 11. But this claim also fails. As a threshold matter, immigration judges have discretion to "receive and consider material and relevant evidence, rule upon objections, and otherwise regulate the course of the hearing." 8 C.F.R. § 1240.1(c); *see also* 8 U.S.C. § 1229a(b)(1). And there is no statutory or regulatory provision that *requires* an immigration judge to hear closing arguments. *See* 8 U.S.C. § 1229a(b)(4)(B) (noting that, in immigration proceedings, "the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government"). "Declining to allow a closing argument after extensive testimony and argument is [therefore] within the judge's broad authority." *Champion v. Holder*, 626 F.3d 952, 957 (7th Cir. 2010). Moreover, the record shows that petitioners had the full opportunity to present testimony and evidence during the hearing, including their own testimony, their son's testimony, and their expert's evidence. Nothing in the record suggests a written closing statement could have strengthened their claim as to the dispositive issue of qualifying hardship, or that a closing argument had "the *potential* for affecting the outcome" of their proceedings. *Freza*, 49 F.4th at 301 (quotation marks omitted). Accordingly, any alleged error is harmless.

B.

Petitioners next assert that the BIA applied the incorrect legal standards when making its hardship determination—a legal error we have jurisdiction to review.[5] According to the relevant regulations, the BIA "will not engage in *de novo* review of findings of fact determined by an immigration judge." 8 C.F.R § 1003.1(d)(3)(i). Instead, "[f]acts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous," *id.*, and the BIA "may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges *de novo*," *id.* § 1003.1(d)(3)(ii). Petitioners contend the BIA violated the regulations by making findings of fact *de novo*. But petitioners' contention lacks merit.

*First*, the BIA did not improperly engage in *de novo* fact-finding regarding the credibility of petitioners' expert witness. Rather, after reviewing the IJ's findings and the evidence in the record, the BIA held that petitioners' son would not be subject to the qualifying hardship *even if* the IJ had credited the evidence provided by the petitioners' expert witness. This was entirely proper. Whether the underlying facts support a finding of exceptional and extremely unusual hardship is a legal question reviewed *de novo*. *See Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010) ("While looking at the hardship

---

[5] "[W]here the BIA is alleged to have made a hardship determination based on 'an erroneous legal standard' or 'on fact-finding which is flawed by an error of law,' our jurisdiction to review that determination is secure." *Pareja v. Att'y Gen.*, 615 F.3d 180, 188 (3d Cir. 2010) (quoting *Mendez v. Holder*, 566 F.3d 316, 322 (2d Cir.2009) (per curiam)).

11

necessarily involves ascertaining the future factual consequences that would result from removal of the alien, it is the degree of hardship that constitutes a legal question . . . ."); *see also* Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54878, 54890 (Aug. 26, 2002) ("Whether [the] facts, as determined by the immigration judge and found not to be clearly erroneous, amount to 'exceptional and extremely unusual hardship' under the Act may be reviewed by the Board *de novo*."). And the BIA did not ignore, contradict, or replace any of the IJ's factual determinations with its own.

*Second*, the BIA was not required to review the IJ's credibility determination for clear error. As an initial matter, the BIA articulated the correct standard of review for findings of fact. *See* AR 3 ("We review the findings of fact, including the determination of credibility, made by the Immigration Judge under the 'clearly erroneous standard.'" (quoting 8 C.F.R. § 1003.1(d)(3)(i))). However, it was unnecessary for the BIA to apply that standard and evaluate the IJ's credibility determination because the BIA had already held that, even accepting the expert's report, the evidence was insufficient to establish the requisite level of hardship. *See* AR 5. Thus, petitioners take issue with the BIA's discretionary decision to affirm on one ground without addressing another of their arguments, but that argument does not raise a colorable legal claim. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule[,] courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *see also Green v. Att'y Gen.*, 694 F.3d 503, 508 (3d Cir. 2012).

12

C.

Petitioners third argument is that the BIA "erred in declining to consider the hardship to the [p]etitioners' son in Ecuador, by incorrectly finding that the issue was not raised on appeal." Petitioners' Br. 13. In essence, petitioners claim that the BIA erred because it evaluated the level of hardship to Anthony based on the assumption that he would remain in the United States, rather than on the assumption that he would return to Ecuador with his parents. According to petitioners, they raised the issue on appeal before the BIA by reference: Dr. Carcamo's report analyzed "the hardship if there was relocation to Ecuador," and petitioners "referenced the report repeatedly in their appeal to the BIA." *Id.* But petitioners' argument lacks merit for two reasons.

*First*, petitioners did not raise the argument on appeal to the BIA and their failure to exhaust administrative remedies precludes our review. To obtain judicial review, a noncitizen is required to raise and exhaust his or her remedies as to each claim or ground for relief. *See* 8 U.S.C. § 1252(d)(2); *see also Santos-Zacaria v. Garland*, 598 U.S. 411, 421, 431 (2023) (holding that Section 1252(d)(1)'s exhaustion requirement is not jurisdictional but describing it as "mandatory"). Our "liberal exhaustion policy" requires "examining the pleadings expansively to determine whether they alert the BIA to an issue that a party wants to be reviewed." *Zhi Fei Liao v. Att'y Gen.*, 910 F.3d 714, 718 n.4 (3d Cir. 2018).

Here, petitioners did not adequately present the question of Anthony's hardship in Ecuador in their notice of appeal or in their filings before the BIA. Rather, in their submissions, petitioners repeatedly suggested that their son would suffer exceptional

hardship if *they* were removed, and if the family were *separated*. *See* AR 66 ("The Court devoted zero analysis to envisioning the 'after' picture for Anthony, once his parents are removed, and he has to juggle full time work, full-time college classes and a serious medical condition that affects his ability to perform academically."); *see also* AR 64 (arguing that the IJ misapplied the hardship standard because "the credible testimony on the record indicated that the loss of [parental] support would result in Anthony foregoing educational opportunities *in order to survive on his own*" (emphasis added)). And petitioners' mention of Dr. Carcamo's report in their submissions to the BIA does not change the analysis. Petitioners referenced the report to argue that the IJ erred in disregarding the expert's testimony. *See* AR 59 ("In his report, Dr. Carcamo gave an expert opinion as to the severe psychological stress Anthony would likely suffer if his parents were removed given his medical and family history."); *see also* AR 66 ("[Dr. Carcamo] provided a detailed report with his observations that included a thorough examination of the family history, the present circumstances and the dynamics within the family that [would] be disrupted/altered upon the family break-up should [petitioners] be removed."). Petitioners' reference to the report was therefore insufficient to preserve the issue of Anthony's hardship in Ecuador.

*Second*, petitioners' argument is "undermined by the record." *Pareja*, 615 F.3d at 189. While Ms. Tacuri testified that Anthony would suffer in Ecuador, *see* AR 210, Anthony testified that he would remain in the United States if his parents were removed to Ecuador, *see* AR 295–96. Specifically, Anthony stated that he "would stay here because it's better opportunities," but that without his parents, "it would be hard to push"

14

himself to achieve what he was "trying to do." AR 295–96. Based on Anthony's own representations and petitioners' submissions, the BIA concluded that it did not need to evaluate the hardship to petitioners' son in Ecuador. We see no error with the BIA's decision on this point.

IV.

The BIA affirmed the IJ's decision that petitioners were ineligible for cancellation of removal because their evidence did not demonstrate that their son would experience extremely unusual hardship beyond that ordinarily associated if petitioners were removed. As both the IJ and the BIA noted petitioners' son "has been treating his ADHD condition successfully for many years: his medication helps his focus and behavior, he does not require daily care or assistance, drives a vehicle, graduated from high school, and has been doing well in college." AR 4. Under our deferential review, these findings are sufficient, and we decline to unsettle the BIA's decision.

For the foregoing reasons, we will deny the petition for review.